Our case for argument this morning is Michelle Gilbank v. Wood County Department of Human Services. Mr. Dietrich. Good morning. Good morning. Thank you, Your Honor, and may it please the Court. Joseph Dietrich for the appellant. Grounded in statutory text, Roker and Feldman set forth a straightforward rule. Lower federal courts have subject matter jurisdiction over claims raising federal questions. Except in the narrow circumstance when a plaintiff seeks to invoke appellate jurisdiction over a final state court judgment. Appellate jurisdiction, in turn, depends on two necessary predicates. An injury caused by a judgment itself, not another source, and a request for appellate relief. Ms. Gilbank's claims satisfy neither, and the district court was wrong to dismiss them. Like the district court, defendants perpetuate a bloated version of Roker-Feldman that departs from statutory text and Supreme Court precedent, is overcomplicated and difficult to administer, and denies plaintiffs their right to a federal court decision on the merits. This court should reject defendants' unsound approach, adhere to ExxonMobil's textually grounded framework, and reverse. Ms. Gilbank seeks no appellate relief. Indeed, she would have no to do so, because at the time she filed this lawsuit through today, she has sole custody of TEH. The courts in Kovacic and Green found that fact dispositive on the Roker-Feldman question. When analyzing whether a federal plaintiff comes to federal court seeking appellate relief, courts compare the relief ordered or denied by the state court to the relief sought by the adjudicated custody. Ms. Gilbank comes to federal court seeking an award of damages for constitutional violations under Section 1983. She does not seek an adjudication of custody or ask for injunctive relief that would effectuate a change in custody. Defendants downplay the importance of appellate relief in the context of determining whether or not a plaintiff seeks appellate jurisdiction. Mr. Dietrich, is the distinction between the form of relief sought dispositive in Roker-Feldman cases? In the mine run of cases, yes. I do think there is an injury role to play, and I will explain that for sure in a moment. I would like to go through the four categories of legal authorities that support why appellate relief is a critical and necessary component of appellate jurisdiction. Number one, black letter statements of what appellate jurisdiction means. Number two, Roker and Feldman themselves. Number three, Roker-Feldman cases beyond Roker and Feldman. And number four, this court's ordinary appellate jurisdiction inquiry outside the Roker-Feldman context. And if you'll allow me, your honors, I'd like to unpack those just briefly. First, the black letter statements of appellate jurisdiction. In Marbury, the Supreme Court was called upon to analyze what appellate jurisdiction meant, and Chief Justice Marshall described as an essential criterion of appellate jurisdiction that it revises and corrects. And it did not speak in terms of injury. Black's law dictionary confirms that. Number two, Roker and Feldman themselves, the only two cases in which the Supreme Court applied the doctrine to deny subject matter jurisdiction. Neither of those cases speaks terms of injury. Both involved requests for appellate relief, and Roker stated its rule in terms of relief, stating that no court of the United States other than this court could entertain a proceeding to reverse or modify a state court final judgment. And again, quote, to do so would be an exercise of appellate jurisdiction. Mr. Diedrich, in Feldman, the court had language regarding inextricably intertwined, which is pretty broad. And it indicated that because the allegations in the claim in federal court were inextricably intertwined with the proceedings below, that that was significant. Does inextricably intertwined survive under your argument? Does Exxon do away with that? Where do we stand with that language in that aspect of the test? First of all, I do not read Feldman itself to adopt inextricably intertwined as a prospective test. I read it as a description of what was occurring in that case. That bears out in Exxon, which did not repeat the inextricably intertwined language as part of a test. I think this court should follow what other circuits have been doing and either expressly strongly reject or repudiate the inextricably intertwined language. Would we have to overrule any of our precedent to do that? Because we have used that language. You have used that language. I don't know that any of this court's precedent explicitly requires it, but it is repeated so much that this court either will. I would encourage the court to make clear that going forward, district courts should not rely on that language because it does cause confusion and it blurs Rooker-Feldman's boundaries. It's broad. It's broad, and it is not necessary to faithfully interpret Congress's jurisdictional grants or to faithfully apply Exxon Mobil. Returning to my list, number three is other Rooker-Feldman cases. These are set in our briefs, but Hohenberg, Graf, and Bayer speak in terms of appellate relief as the primary characteristic of those claims and why they were not barred by Rooker-Feldman. Finally, this court's ordinary appellate jurisdiction inquiry outside Rooker-Feldman. When a would-be appellant asks for this court to review a federal district court decision, this court asks whether or not there is appellate jurisdiction. And to do so, it asks routine questions, including, is there a final judgment? Is the would-be appellant aggrieved by that judgment? And is the would-be appellant seeking some relief from this court of the kind that it provides? And it's that last question that's key here. And we know that this question is asked because of this court's repeated statements that an appellant cannot merely challenge a statement and an opinion, but must challenge the judgment itself. And if an appellant comes to this court saying, I quibble with a legal conclusion or a factual finding, but does not ask this court to either vacate relief awarded or grant some relief denied by the lower court, then this court has no trouble dismissing that case for lack of appellate jurisdiction. Mr. Diedrich, as you know, the ExxonMobil test is framed in terms of the last phrase is in terms of review and reject the state court judgment, correct? And what I've been wondering about is what the trial of Ms. Gillbank's claim for the deprivation of custody of her daughter for in essence, a top-to-bottom review of the arguments, hearings, evidence presented, decisions of the state trial court, and ultimately a submission of questions to a jury in federal court that would ask, in essence, did the state judge get this right? That sounds an awful lot to me like review and reject, but I'd be interested if you disagree with that characterization of what the trial might look like. I disagree to the extent that we are talking about appellate relief and allow me to explain what I mean by that. As this court's cases, as ExxonMobil have made clear, Rooker-Feldman is not triggered simply because a plaintiff asks a federal court to disagree with a state court's legal determinations or factual finding. That is all common ground here. Yes, Your Honor. And then, but moving on, in the state court proceedings, Ms. Gillbank could not, under governing statutes, bring a claim for damages against the defendants. She brings a claim for damages against- But she could raise all of her constitutional issues about what was happening in the state court, correct? Only to the extent that she was objecting to the grounds for the petition for child protective services. Beyond that- She could object to what was happening, the way the court was treating her, correct? And the judge invited her to appeal. She could object on limited grounds as provided by Wisconsin state statutes. But the fact that she had no ability to bring the claims she brought in federal court means she has no judgment against her that binds those parties or that adjudicates those claims. And therefore, she is not seeking appellate relief because she has no judgment that she would be asking for that on. And so when Exxon speaks of review and reject, that is what it is talking about. Looking at Rooker and Feldman, so my friends on the other side have talked about the Exxon language as a mere description and not as a four-element test. But if it's merely recapping or summarizing past precedent, we have to take account of Rooker and Feldman, neither of which speak in terms of injury, both of which speak in terms of appellate relief, modifying, reversing, changing something about the relief ordered. And so if anything, if we're going to treat Exxon as a mere description, we should give more weight to the review and reject language as a function of appellate relief than we give to the injury language. Mr. Deidre, can you go back to Judge Hamilton's question for a second? Sure. So if Ms. Gilbank prevailed in the substantive due process allegations that are advanced in her amended complaint challenging the August 23rd, 2018 adverse temporary custody order, if she prevailed on that, wouldn't the necessary conclusion or the necessary takeaway from that be that the temporary custody order violated her constitutional rights? So she brings the substantive due process claim against the social workers and police officers that took the child away originally. She does not bring a claim against the judges. She did originally. That has since been dropped. Forget the name defendants for a minute. Assume that she just wins wholesale on her allegations. Wouldn't it necessarily mean that her substantive due process right is violated under Troxel? I do not necessarily agree with that, Your Honor, because if the police officers and social workers violated her substantive due process rights, the judicial mechanisms did not intervene until days later. And at a very minimum, she would be able to recover the nominal damages for that period in between. So it's all coming back to the question that Chief Judge Sykes asked about relief for you. Because what you're saying is, well, that's a custody decision. It's not a money damages decision. And that's really what it seems to be turning on. Am I hearing you right? That is in large part what we are talking about. I would refer the court to the 10th Circuit decision and graph, which asked a question in this regard. If the federal plaintiff were to prevail on all the elements of all of her claims and nothing would change about the underlying state court judgment, then Rooker-Feldman does not apply. That's the exact situation we have here. Mr. Diederich, it's clear that Rooker-Feldman does not bar all of her claims, including, for example, the window from the August 21st arrest when the daughter goes with the father's custody to two days later, where there's a judicial order. And I think at least my concern is primarily on the judicial order, August 23rd, and going forward from that. Yes, I understand, Your Honor. So, keep in mind a couple of things. First of all, a federal plaintiff is the master of her complaint. And the way she has set up her complaint does not parse the claims based on the date at which the relevant conduct started. Second, there are cases from this circuit and from other circuits that confirm that it is not a Rooker-Feldman injury if the defendant's out-of-court conduct is later ratified or left uncorrected by the state court judgment or order. And that's Iqbal, Pushpin from this circuit, as well as Hunter from the Second Circuit as good examples. In addition, Ms. Gilbank complains that the judicial process and the judicial orders were the third-party defendant's submission of false and incomplete information, not by a biased adjudicator, but by the defendant's submission of false and incomplete information. And several... Would you have to accept, though, that there's a fraud exception to Rooker-Feldman? So, I understand this court's decision in Hadzi Tanovic to do away with a fraud or conspiracy or corruption exception. However, I would also refer to the expressed language of that decision, which disclaims the case that we have here. At page 407, this court said, this decision does not speak to whether or under what circumstances allegations of fraud by state court opponents escape Rooker-Feldman. And that is the case that Ms. Gilbank brings. And that case is like Bayer, Webb, Vandercutty, and to some extent, Kovacic, all of which dealt with allegations that social workers or police officers submitted false information that then influenced the state court judge to make the decision that it did. Could you put the state court judge on the witness stand in federal court to explain whether the information that was provided made a difference in her decision? That would seem to be pretty critical to prove prejudice and causation. So, whether or not you could put a judge on the stand is controlled by other areas of law that I am not prepared to talk about today. Wouldn't it be unfair to say you've got to prove causation and not allow the plaintiff to call the judge? The critical issue that I think we're discussing, Your Honor, goes to the merits of the claims and whether or not the plaintiff has invoked subject matter jurisdiction. And what I mean by that is- Beyond that, we have to address the nature of the claims and what the proof would look like. That's why I asked what the trial would look like here. Correct. But since Bell v. Hood through Steele Company, the Supreme Court has maintained a wall between allegations that suffice to establish jurisdiction and considerations of the merits. And to the extent that Ms. Gilbank fails to prove her claim that the state court was ultimately influenced or prejudiced by the false information, that would go to her success on the merits or the quantum of damages. It does not determine whether- Counsel, I'm puzzled by where you think it would help to say that damages claims are outside Rooker-Feldman. The next doctrine you would encounter is the doctrine of Heck against Humphrey. Which says that Section 1983 can't be used to get relief inconsistent with the validity of a state court judgment unless that judgment has been set aside on appeal or in some other way. You seem to be conceding that the relief you're seeking is inconsistent with the validity of a state court judgment. Doesn't it follow that it's Rooker-Feldman on the one hand or Heck on the other? You lose either way. So what's really at stake here? I don't think that Heck falls because Rooker-Feldman is about statutory interpretation. Nobody disputes- So is Heck. I'm asking how the kind of claim you're making here is consistent with Heck. Because as I say, maybe Heck one way or Rooker-Feldman the other, but the plaintiff loses either way. Is there some way the plaintiff wins consistent with Heck? I do not read Heck to implicate the same issues that the Supreme Court has talked about in the Rooker-Feldman. Of course not. Heck is not a jurisdictional doctrine. But I'm still asking how is your claim consistent with Heck? There may be a dispute about whether the bottom line should be dismissed for want of jurisdiction or dismissed as premature given Heck. But does that dispute matter? I apologize, Your Honor. I'm not sure I followed the last part of that question. Are you aware of Heck against Humphrey? I am aware of Heck and the bar that it serves to 1983 claims, yes. Well, you're making a 1983 claim and Heck is about 1983 claims. The holding is that section 1983 does not support damages unless the state court judgment has been set aside in some way. There may be bases other than 1983 to seek damages, but 1983 is the only base you're using. And that is the only basis that most of the Rooker-Feldman cases that the Supreme Court and that this court have adjudicated arise on. As you indicated, Your Honor, Rooker-Feldman is strictly about subject matter jurisdiction. Of course, many claims that fall under Rooker-Feldman and that we would argue erroneously fall under Rooker-Feldman will be dismissed at the same juncture by the district court judge on the merits. There is no reason that this court or district court... The court does not reach the merits. The suit is premature, the Supreme Court held, until the state court judgment has been set aside in some way. I mean, that's the holding of Heck. It's limited to 1983, but I think I understand that only 1983 is at issue here. Correct, but unlike as far as I understand Heck, this court, or excuse me, this claim does not concern anything about a criminal conviction. And there's nothing about Heck that depends on a criminal conviction. That's the holding of Edwards against Balasag, but Heck is not limited to criminal convictions. I am unaware of any precedent that suggests that Rooker-Feldman cases should be analyzed under the Heck bar. I've already told you Heck is not jurisdictional, but you're not tackling the gist of my question, which is what difference does it make to your client whether she loses on jurisdictional grounds under Rooker-Feldman or prematurity grounds under Heck? Nobody has made a prematurity ground argument under Heck, and I am unaware of any reason that it would apply. No case stands for the proposition that Ms. Gilbank's claims would be only decisions of the Supreme Court. I understand your point, Your Honor, but I do not see a Heck argument here. And Ms. Gilbank, the fact of the matter is that Ms. Gilbank had her child taken away from her. She has a right to a federal court decision on the merits given the way she has pleaded her claims. And whether or not that is determined on the merits of the Supreme Court is not determined on the merits of the Supreme Court's decision. The Supreme Court held in will against Michigan Department of State Police that states and their agents are not persons for purposes of 1983, and therefore 1983 can't be used to seek damages against them. Do you have any answer to the problem under will? The district court dismissed the state agents, including the judges, as well as the Wood County Health Department itself as being not a person, and we do not challenge those rulings on appeal. Okay, that's a bad. So, Chief Judge Sykes, if I could return to your earlier question about injury. Injury does, oh, I'm sorry. It was a question from the other side. Yes, I just wanted to make sure you finished responding to Judge Easterbrook first, but it sounds like you were. I need to go back to the language of Exxon Mobil. It talks about review and reject, okay? The Supreme Court did not use the words review and overturn, and I take it to mean you're asking us to understand it that way. Now, twice in the opinion, it does use the word undo, but not in the language setting forth the restatement of Rooker Feldman, okay? And earlier when you answered Judge St. Eve about inextricably intertwined, you urged us to see that as merely describing what was happening in Feldman and not something broader. So, I'm wondering, tell us why is that not the case with the use of undo in Exxon Mobil? Both times the court uses that, one in a footnote, one deeper into the opinion. Those are in sentences talking about Exxon Mobil and the dispute with Saudi basic industries. So, how is that not just describing what's at issue in that case as opposed to how we are to understand what reject means? Yes, Your Honor. I have two responses in that regard. So, first, the Feldman question you raised, Mr. Feldman specifically asked for an injunction that would him into the bar, and that would be the exact opposite, and that would be appellate relief compared to what the state court or the D.C. court did in that case. But more directly to your point, Your Honor, I want to just return to first principles briefly. Nobody disputes that Section 1331 would give Ms. Gilbank jurisdiction here. The question is whether or not Section 1257 carves out jurisdiction, and Section 1257's carve-out can extend only so far as its grant to the U.S. Supreme Court. The grant to the U.S. Supreme Court, in turn, must be read in conjunction with Article III, which would only give the Supreme Court the possibility of appellate jurisdiction in the context of reviewing a state court decision. So, although Section 1257, like Exxon, uses the word review, it must be understood to mean appellate jurisdiction. Once we get that far, we turn to my other arguments about what appellate jurisdiction means. It should just, Sykes, if I could briefly return to your question about injury. The injury component of Rooker-Feldman serves two important purposes. First, it separates claims that this court would bound by a judgment below, tries to invoke appellate jurisdiction above. And this court would say that there's no appellate jurisdiction because you don't have standing to appeal, because you're not actually injured by the judgment. That's the U.S. Supreme Court's Rooker-Feldman decisions in Johnson v. DeGrande and Lance v. Dennis. Finally, the injury component also serves the important purpose of focusing on the injury by, excuse me, out-of-court conduct and separates it from the conduct that may be later ratified by a state court, like we have here. With the remainder of my time... Mr. Dietrich, could I ask you how your reasoning would apply to a party whose home has been foreclosed upon in state court or a business shut down by a preliminary injunction without appropriate process? Yes, Your Honor. There have been Rooker-Feldman cases like that, and I don't think that we can categorically say they'd turn out one way or another. It would depend on how the plaintiff pleads their federal complaint. But it would be possible, as far as foreclosing on my house, so I'd like damages from the bank in federal court in the form of the value of my equity was taken away. That would be okay. As I understand your hypothetical, that would be enough to invoke federal subject matter jurisdiction, but that claim would immediately fail on race judicata preclusion or... Maybe. In all likelihood, yes. And there's no... Subject to exceptions. It depends on... If you didn't have a fair hearing, for example. Well, the preclusion doctrines depend on state law, and that's one of the dangers of Rooker-Feldman is that it federalizes and jurisdictionalizes that state preclusion law. And that's one of the reasons why a Rooker-Feldman doctrine that's overbroad does harm to the law. I would like to save the remainder of my time for rebuttal, if I could. Thank you. That's fine. Thank you. Ms. Kaur, did I pronounce that correctly? Very close, Your Honor. So my name is Anit Kaur, Your Honor, and may it please the court. I represent the Wood County defendants in this matter. Along with me are attorneys Jason Just and Tiffany Wolfel. They represent the Marshfield defendants in this matter. I will be addressing the Rooker-Feldman doctrine and its application to the facts of this case. Attorney Just will then discuss that the district court dismissed three of Ms. Gilbeng's claims on the merits, and that this court can and should affirm for any of these several reasons that were previously fully argued before the district court. Turning to the Rooker-Feldman discussion, I'll be addressing this in three parts today. First, in applying the Rooker-Feldman doctrine, the court should focus on the function of the doctrine as opposed to the form of a federal plaintiff's claims. Next, Ms. Gilbeng's claims are barred under the doctrine because she is complaining of injuries that were caused by the state court judgment, and she is seeking review and rejection of those judgments. Can I ask you a question about that, Fang, about Judge Easterbrook's questions regarding HECC? HECC is not a jurisdictional bar, of course, but is the status of the state court judgment material under, you know, on the HECC issue? Whether or not the judgment is moot? Well, Rooker-Feldman would bar Ms. Gilbeng and all plaintiffs like Ms. Gilbeng from federal court, even if she was able to overturn the state court judgment. She would still be barred under our interpretation of Rooker-Feldman, right? Because the injury flows from the judgment. So she never gets to HECC. Your Honor, I can't address the HECC issues specifically. I'm not prepared to address those. Well, we've conflated the injury prong of the Exxon test and the review and reject prong of the Exxon test. So if injury is the only test, you follow me? If injury is the only test, then the status of the state court judgment is immaterial. It doesn't matter. So if Ms. Gilbeng was able to overturn the state court judgment, she would still be barred under Rooker-Feldman, the way we've interpreted and expanded Rooker-Feldman to keep plaintiffs like Ms. Gilbeng out of federal court. Your Honor, I disagree that this court has conflated the injury and review and reject components. The court has not done that. Those two components, and we discussed this last time, those are mentioned in Exxon Mobil, the summary in Exxon Mobil that summarizes Rooker-Feldman. And those two components are separate, but they often rise and fall together. Not always, but they often- When wouldn't they? Give me an example. Feldman, Your Honor, is an example. So in Feldman, the plaintiffs were complaining of injuries that were caused by the state court judgments. And they sought to overturn that judgment, among other things. But one of the things that the Feldman plaintiffs sought was a declaration that the statute upon which the state court judgments were based, that that statute was unconstitutional. That, Your Honor, is an injury that was caused by the state court judgments. But the court would not have to review those judgments in order to award the damages. The court would simply have to review the statute. And the Third Circuit in Great, I believe it was Great W Mining, Your Honor, gives another example. And that is, I believe it was servicemen in that case, who were retired servicemembers whose pay had been divided in divorce proceedings per the former Spouse Protection Act. So they were injured because their pay had been divided. But they were not seeking to overturn those judgments, Your Honor. They were seeking a declaration that that act was unconstitutional. So yet another example of where you can claim an injury, but it doesn't necessarily follow that you're seeking review and rejection. Having said that, Your Honor, these two components do often rise and fall together. And what we need to do is look at the function of the doctrine, Your Honor. And the function goes back to... Sounds like legislative intent to me. What we need to do, Your Honor, is go back to Section 1257. And what Section 1257 says is that only the U.S. Supreme Court... The U.S. Supreme Court is the only federal court that is permitted to review state court judgments. Review, that's the term that's used in 1257. And so it follows that federal district courts are explicitly barred from doing so. They cannot review those state court judgments. I guess that's the question that your esteemed colleague brought forth is, is that state court judgment now that TEH is back with the mother, is that state judgment now moot? And if not, why not? Your Honor, the state court judgment is not moot. It's not moot to the analysis here because it is a driver of the majority of the injuries that Ms. Gilbank complains of here. And I refer you to her complaint, Your Honor. Her amended complaint, rather. Page 22, that's where she lists all her injuries. And her injuries are, she says that the minor began wetting herself after supervised visits and upon being told that she had to leave Ms. Gilbank. That injury, Your Honor, was caused by the state court judgment. That there was potty training regression that the minor experienced upon being... with the minor's father, Mr. Hoyle. Are we able to separate it from the procedural due process, though, violations? Let's look at the notice. So, Your Honor, what the district court did here, yes, we can separate those injuries. Those injuries, the lack of notice for the hearing, for example, that occurred prior to the state judgment. So, the acts that occurred prior to August 23rd, 2018, prior to the first state court judgment, those were not caused by the state court judgment. They couldn't have been. The state court judgment hadn't been issued at that point. And the district court, therefore, addressed those claims on the merits. So, the position is that the procedural due process regarding notice would not be barred by Rooker Feldman? Correct, Your Honor. Certain of her due process claims were barred on the merits and appropriately dismissed on the merits. And going back, Your Honor, to your mootness question, again, all of the injuries that Ms. Gilbank is complaining of arise from those state court judgments. When would it be moot? When would the state court judgment live forever? And what does that do to our mootness doctrine? Your Honor, if she had come here and said... I guess what we have to look at, Your Honor, is what is the injury that's being complained of? I guess, was it moot and then it was resurrected by the complaint in this case? Once she got her daughter back, it was kind of dead, right? Once she got her daughter back, the custody order was moot, right? No, Your Honor. How so? Because she is complaining of injuries... No, forget the complaint. She gets her daughter back and hasn't filed a federal complaint yet. It's moot, right? It's over. No, Your Honor, it's not. So, when does it become moot? That's what I'm asking. In Ms. Gilbank's case, it never became moot. Page three of Ms. Gilbank's brief, she says that she's continuing to experience continued trauma. She's experiencing continued trauma that was inflicted as a result of the year that her and her daughter were separated. These judgments are not moot to Ms... Also by the father's actions. I'm sorry, Your Honor? Also by the father's actions as to the daughter, which she predicted. Right. That's the allegations that were listed in the amended complaint, but as discovery continued to be... So, you know... It sounds like you're arguing that the claim arising out of this judgment isn't moot, not that the judgment itself isn't. Your Honor, neither is moot. The judgment is not moot to Ms. Gilbank here. And I would like to, I guess, take a step back and say there is nothing in Rooker-Feldman 1257 or ExxonMobil that discusses mootness. What we're looking at here is, was there an injury that was caused by a state court judgment? And is the federal plaintiff seeking review and rejection of that judgment? But I think the mootness issue would be relevant to the fourth prong there, a review and reject. If the underlying judgment, it no longer matters, take mootness language out of it, then how could a court reject that underlying judgment? Because Your Honor, it does matter. If it didn't, would that change your argument? And again, I guess we have to look at the specific facts of the case. We know in this case that it matters to Ms. Gilbank, that it mattered then, that it matters right now, and that she's claiming that she's continuing to be harmed by that judgment, that she's experiencing continued PTSD trauma as a result of those judgments. Those judgments, Your Honor, are not moot to Ms. Gilbank or the analysis here. Counsel, why, in your view, did the Supreme Court hold in heck that the 1983 suit was premature, rather than that it was barred by the Rooker-Feldman doctrine? What happened in heck is essentially what's going on here. There's an effort to obtain damages for the consequences of a decision of a state court. The Supreme Court did not invoke jurisdictional reasoning to bar that suit. It invoked the doctrine of prematurity. Why is this case any different? Your Honor, it may not be different. As I said, I- different things. Because among other things, heck, being non-jurisdictional can be waived or forfeited, which perhaps you have done. But I'm asking why, in your view, this whole line of heck cases is phrased in terms of premature litigation, rather than lack of jurisdiction under Rooker-Feldman? Your Honor, unfortunately, I'm not prepared to discuss heck, but I am more than happy to supplement our responses to address your specific question on that. I'm sure the Chief Judge will ask for greater responses if the Court thinks it needs them. Ms. Corr, can I give you a hypothetical? Yes. I want you to change the facts here. Suppose that on August 23rd, 2018, when Ms. Gilbank lost custody of her daughter, that the family court judge said, I'm awarding custody to Mr. Hoyle because of your race, religion, and gender. Okay? And then she complained, and she filed an appeal, and 30 days later, the family court judge reconsidered and said, nope, I'm giving you custody, because those were invalid reasons, and Mr. Hoyle is- I'm concerned he's abusing the child, and I think you've got your meth problem under control that way. Rooker-Feldman problem in the 1983 suit that follows for the unconstitutional discrimination for the 30-day period. So, Your Honor- Money damages. It would depend, Your Honor, on what the injury is that the federal plaintiff- So, the plaintiff just says, look, maybe I shouldn't have custody of my daughter, but it can't be because of my race, religion, or gender. So, if they're claiming an injury that was not caused by the state court judgment- No, the family court judge said, I'm awarding custody to Mr. Hoyle because of your race, religion, and gender. If, again, I guess we go back to what the injury is. So, we have to- 14th Amendment, discrimination. Well, if the injury is the state court judgment, and she finds that these are the reasons why, and she's asserting, rather, that the reasons it would- The judge said it in open court. You don't have to guess. Can you bring the 1983 claim? And she says, look, I'm not trying to get rich, but I want a dollar for each of those violations. No, Your Honor, she could not. If she is claiming that she was injured by the state court judgment, that the state court judgment was entered for these erroneous reasons, she could not bring that suit in federal court. Ms. Kaur- Go ahead. Ms. Kaur, you started your argument with three parts. Focus on the function of the doctrine, not the form. Gilbank's claims barred under Rooker-Feldman. What was the third part? Yes, Your Honor. The third part that I wanted to discuss, Your Honor, is whether the court decides to keep its current test or adopt a new test, the court should not elevate form over function, which is what Ms. Gilbank is attempting to do here. And I can go right into that. I believe that the Seventh Circuit's current test effectuates the purpose of the doctrine. It must look at both the injury and the relief components. Ms. Kaur- What- If I could ask you along those lines, the Supreme Court case Skinner v. Schweitzer- Yes, Your Honor. Right? Where the claimant tried to challenge the underlying rule, right, that governed his request for DNA testing as being unconstitutional. The state adjudicators had denied him that request, and the Supreme Court said Rooker-Feldman doesn't apply. There's no Rooker-Feldman problem here because the claimant is challenging the underlying rule. In the state court proceeding, hypothetically, say if the claimant did challenge the constitutionality of that rule before the state adjudicators, right, and said, you know, by the way, I think I'm entitled to DNA testing under this rule, Article 64, and alternatively, Article 64 is unconstitutional. And the state court adjudicators, state court judges said, nope, on both grounds. Okay. In that situation, would the claimant's claim be barred by Rooker-Feldman under your reading? Would the Supreme Court have come out differently in Skinner v. Schweitzer? Your Honor, again, it would go back to what the federal plaintiff's injury is in that case. So if the federal plaintiff then comes to district court and says that the federal plaintiff wants the federal district court to find otherwise, that there was in fact What if the claim is the exact same claim he brought in state court, that is, that Article 64 is unconstitutional? Your Honor, in that case, that would not be barred under the doctrine. That would not be barred or would be barred? Would not because he would not Even though he raised that same argument in state court and the state court rejected that argument. And so what he is, what the federal court would have to do in adjudicating that claim would be basically saying the state court got it wrong. You're saying that in that case, that claim still would not be barred by Rooker-Feldman? Yes, Your Honor, because the piece that's missing there is the injury. And a good test, similar to a test that the third circuit has proposed in Great W Mining v. Fox Rodschild, a third circuit case from 2010. The third circuit said a useful guidepost is to look at the timing of the injury. So that is whether the injury that is being complained of existed prior to the state court judgment. And in this case, that would be the case. The alleged unconstitutional statute existed prior to the state's state court judgment. And so if he's simply seeking to relitigate that before the federal district court, that's not Rooker-Feldman. If I understand your position correctly, Ms. Kaur, in terms of Exxon Mobil's elements three and four, in the case you're describing and discussing with Judge Lee, you'd have perhaps an effort to review and reject, but you don't have an injury caused by the judgment itself. That's exactly it.  That's exactly it, Your Honor. But when you've got an injury caused by the judgment and you're seeking damages for it, do you think we're almost always going to have element four satisfied as well? I would not say that would always be the case, Your Honor, because what we have to look at is what are the damages being sought for? It's not as simple as- What would be an example of that? Where a plaintiff alleges in the complaint that the injury was caused by the state court judgment, yet the review and rejection element is not met. So, Your Honor, that would be the earlier example that I gave, the situation that was present in Feldman. That was based on timing, I thought you said, that the injury occurred before the judgment. No, so Feldman, Your Honor, was a situation where the plaintiffs complained of injuries that were caused by the judgments, denying them their law licenses. But one of the relief components that they were seeking was a declaration that the statute upon which that judgment was based was unconstitutional. So, in that situation, the injury is present, they were injured, but the district court would not have to review the state court judgments or reject them in order to grant them the relief, which is finding that the statute was unconstitutional. How does that differ from Judge Scudder's hypothetical? Because in that case, Your Honor, it's the exact opposite. There was no injury. The federal plaintiff in that case was not injured by the judgment, but rather by the unconstitutional statute. He's seeking review and rejection of the judgment, but the injury component is not there. The distinction that you're drawing out from Feldman has to do with the two roles that lower court in that case in D.C. was performing. It was performing an adjudicative role and a legislative role, and the court separated those two out and said, to the extent that this decision implicates the court's adjudicative role, which Brooker applies, to the extent that it implicates the court's legislative role, it falls outside of that doctrine. It doesn't map onto what's going on in this case. We've got a state court not performing an adjudicative role all the way down. No legislative, no rulemaking going on here. There was rulemaking going on there about the criteria for bar admission. Correct, Your Honor. Yes, that's not at all what we have here. Right, so that's not an answer to Judge St. Eve's question. Can you come up with another example? Another example, Your Honor, would be the situation that was in the Great Mining case. This is the Third Circuit case, and this is an example that the court gave in that case. The retired service members' pay, rather, was divided as part of their divorce proceedings, and that was per the former Spouse Protection Act. They sought review of that act, not of the judgments requiring them to pay their spouses per the act, but the act itself. And so, again, that's another situation where there's an injury, but they're not seeking review and rejection. Here, Ms. Gilbank is complaining of injuries that were caused by the state court judgments, and she is seeking review and rejection of those judgments. To be fair, though, the Third Circuit's been on both sides of this, haven't they? On the damages piece, Your Honor? The Bujanich case, I believe, recently. I think what it comes down to, Your Honor, is what is the underlying injury, right? So, applying this to Ms. Gilbank's case, the injuries that she alleges prior to the August 23, 2018 judgment, the Fourth Amendment, the Fifth Amendment, and certain of her due process rights, those are separate from the state court judgments, just timing-wise, using the Third Circuit's analysis. Those are separate. So, she can claim damages- That's not what this fight is about, so maybe focus on what the fight is about. Right. So, looking at the injuries that were caused by the state court judgments, we know that they were caused by the state court judgments, Your Honor. She tells us herself in her- But the relief she's requesting does not require the federal court to take some action that would affect the state court judgment. In other words, overturn, undo, and join anything. It's a request for damages. That doesn't interfere. That doesn't raise a jurisdictional question. It's original jurisdiction as opposed to appellate jurisdiction, which is the whole foundational theory underlying the Rooker-Feldman Doctrine. And so, the form of relief really matters here, which was my first question to Mr. Dietrich. Your Honor- I asked you the race hypothetical. Exactly. You know, if you did something that everyone on the planet would recognize as unconstitutional, you can't have custody of your daughter because of your race. And then 30 days later, it was corrected on the ground. Well, you can't have custody of your daughter now because you're strung out on methamphetamine. That way, you'd say there's a Rooker-Feldman bar to seeking relief for what everyone would stipulate is a violation of our 14th Amendment rights. That's a hard outcome. Well, Your Honor, we go back again to the language in 1257 in Rooker and Feldman. What we're looking at is review and rejection. That's much broader than overturning. You seem to be arguing that if the federal court's outcome would disagree with what the state court did in any way, that that counts as review and rejection. No, Your Honor, that is not what I'm arguing. In this case, what I'm saying is that by seeking compensatory damages, Ms. Gilbank is asking the federal district court to review the state court judgments and to reject them. The federal district court cannot award her the damages that she's seeking for injuries clearly caused by the state court judgments without reviewing those judgments and rejecting them. That is explicitly barred by 1257, Rooker and Feldman, and none of those authorities none of those authorities contain an exception for a situation where a federal plaintiff is seeking monetary damages. That exception does not exist. Do you agree there is also not an exception for egregious errors in the state courts that the whole premise of Rooker and Feldman is that the state courts got something wrong? Absolutely, Your Honor. There is no exception for the egregiousness of the state court's decision either. If the state court was wrong, then it should have been appealed to the state appellate court, not to the federal district court. And this court has repeatedly... Oh, I apologize, Your Honor, my time is up. May I finish? You may. This court has repeatedly held that same rule, Your Honor, that a party cannot escape the doctrine by asserting damages, as have several other circuits, which we've cited to in our brief. Thank you. Thank you, Mr. Just. If that pleases the court, Chief Judge Sykes, my name is Jason Just. Attorney Wolfel and I represent Marshfield defendants, Detective Iverson and the Marshfield Police Department. Reviewing the district court's opinion as a whole, it is clear the district court dismissed three of Ms. Gilbank's claims on the merits. Therefore, this court can and should affirm dismissal based on any of the fully briefed offenses that were raised before the district court. During the summary judgment phase, the district court recognized that Ms. Gilbank claimed independent injuries for three of her claims. Those claims were the warrantless year analysis, the denial of counsel, and the allegations of due process. The district court decided those claims on the merits, and we know because he tells us multiple times that he did. Introduction page of opinion one and two, he states the other 15, he states the other injuries, Gilbank's other claims lack any evidentiary basis. But most importantly, he discusses it in the analysis section, pages 12 to 13. Mr. Just, even if he had not addressed the merits claims since they were litigated below and preserved, it's de novo review on summary judgment review, so we can take a look. So the procedural point you're making maybe can be left to the side because you have very limited time to discuss the merits. So let me skip right to the merits. Your Honor, the single sentence that Ms. Gilbank cites to... Don't tell us anything more about what the district court said on these points. What I'm suggesting is that you use your time to focus on your merits defenses because I thought that was the thrust of your argument here. Yes, Your Honor. The district court dismissed Ms. Gilbank's claims for your analysis, finding that she consented, so there can be no constitutional violation. And I apologize if I'm misunderstanding Your Honor's direction here. Okay, you've got a consent-based merits defense, and I think you've got some probable cause-based defenses. Yes, Your Honor. Okay, focus on the substance of those. The Fifth Amendment defense, the defense that was raised regarding the Fifth Amendment allegation was that no questions were used against her, and she was not afforded the right to counsel during child custody proceedings pursuant to Chavez v. Martinez. The district court's issue preclusion, the defenses were raised regarding issue preclusion to the various due process claims that Ms. Gilbank raised, and the court analyzed each of those and ruled on the merits for each of those and dismissed those claims. With respect to the two days, August 21 to August 23, for a judgment to complete custody, how did the district court resolve the question about whether anybody violated Ms. Gilbank's rights on the spot of the arrest when her daughter went away with her father? Your Honor, we know that custody wasn't taken from her by law enforcement or social services at that time. She gave custody to Mr. Hoyle. Ms. Gilbank did. Correct. That was what the district court found on undisputed facts. Correct. Thank you. Because the district court dismissed these claims on their merits, again, the district court did not assume hypothetical jurisdiction. It actually addressed these on the merits. This court can and should affirm dismissal based on any grounds that were fully briefed and raised, such as qualified immunity, where this court has held that most state defendants will have qualified immunity in child custody proceedings. That's royalty pain. And upholding dismissal is consistent, such as in Jensen v. Foley, where this court on Rooker-Feldman did not apply, upheld dismissal based on issue preclusion. For these reasons, we would ask that this court uphold dismissal and not allow this matter to go back down for another bite at the apple. The defendants in this case are civil servants and have had this matter hanging over their head for four years. We deserve some final recognition. I see my time is up. Thank you. Thank you. Mr. Dietrich. Thank you, Your Honor. I have three points I would like to make in rebuttal. First, my friends accuse us of placing form over function. I disagree. The test we propose that is a faithful interpretation of Congress's jurisdictional grants. The myopic focus on injury from the defendants puts Rooker-Feldman on a collision course with Rooker and Feldman themselves, as well as with this court's understanding of appellate jurisdiction outside the Rooker-Feldman context. Mr. Dietrich, can I ask a question based on Ms. Kaur's last point that she made? My question is this. Is it possible to deny a legal conclusion that the state court has reached without reviewing and rejecting that court decision? Yes, Your Honor. Many courts have already confirmed that point, but the question of appellate relief comes down to this. Is the federal plaintiff asking the federal court to either vacate relief awarded by the state court or grant relief denied by the state court? Denying a legal conclusion has nothing to do with it. Correct. And this court understands that point outside the Rooker-Feldman context when it says it's not enough to invoke appellate jurisdiction if you merely quibble with a statement and opinion but don't challenge a judgment itself. My second point is about mootness. We use that term, as the courts in Green and Kovacic did, to simply mean, as relevant to the fourth prong, the appellate relief component, that Ms. Gilbank has no possible reason for seeking relief from that judgment because, in fact, it doesn't control her custody anymore at all. There was a superseding proceeding and a paternity action that gave her custody back. My last point will respond to Mr. Just's comments. For several reasons that we have articulated in our briefs that I went through at oral argument before the panel, this court should not reach the merits beyond Rooker-Feldman but should instead remand. Those are, simply stated, the hypothetical jurisdiction and advisory opinion problem. Second, the general rule that this court does not reach issues not passed upon by the district court, and that would include qualified immunity. Number three, the district court's abusive discretion in failing to give sufficient reasons for why it was applying issue preclusion, in contrast to the Wisconsin Supreme Court's directions to consider things like public policy and fundamental fairness. The district court's single paragraph explanation does not go into those things. Finally, there are some disputed facts, including on the claims that Mr. Just was talking about. There is a dispute about whether or not Gilbank actually granted Hoyle custody of TEH, and in support, I'd refer to the record at page 115, as well as record document 60 at pages 2-3. In addition, I'd point out that under Wisconsin state law custody and placement are terms of art. Finally, whether Ms. Gilbank consented is subject to a complicated voluntariness test that the district court did not conduct. We ask that this court reverse the Rooker-Feldman dismissal, vacate the remainder of the district court's judgment, and remand for further proceedings. Thank you. May I ask you one very fast question, please? Would we need to overturn Hadzi Tanavik if we adopt your approach? You would not need to, but I suggest and invite this court to do so, because the plaintiff in Hadzi Tanavik did not seek appellate relief as we have understood that. However, if the court does not go that far, I'd refer to the quote that I referenced earlier, page 407, which said that Hadzi Tanavik is not talking about the set of facts that we have here. Thank you. All right, Mr. Dietrich, I'd like to, before we close this proceeding, thank you and your firm for representing Ms. Gilbank on a pro bono basis, as I understand you have been doing by court appointment. So you and your firm have the thanks of this court. And our thanks to all counsel. The case is taken under advisement. The court is in recess.